# EXHIBIT 12



April 6, 2021

Cyber Ninjas
Attn: Doug Logan
5077 Fruitville Road
#109-421
Sarasota, FL 34232
legal@cyberninjas.com
dlogan@cyberninjas.com
sales@cyberninjas.com

CyFir
Attn: Andrew Ward, CEO
20130 Lakeview Center Plaza
Suite 120
Ashburn, VA 20147
mediarelations@cyfir.com

Digital Discovery
Attn: David S. Weber, General Counsel
8131 LBJ Freeway
Suite 325
Dallas, TX 75251
david.weber@digitaldiscoverycorp.com

Wake Technology Services
Attn: Chris Witt, President
117 W Gay Street
#126
West Chester, PA 19380
cwitt@waketsi.com
press@waketsi.com
info@waketsi.com

**VIA E-MAIL**

Dear Mr. Logan, Mr. Ward, Mr. Weber, and Mr. Witt:

On behalf of the undersigned legal organizations, we have significant concerns that the tactics that your companies intend to utilize in your proposed review of the Maricopa County election results (hereinafter the "Cyber Ninjas 'Audit'" or "Audit") likely violate both federal and Arizona law. In particular, we understand that as part of the "Audit," Cyber Ninjas in partnership with other companies has agreed and plans to, among other things, "knock on doors to confirm if valid voters actually lived at the stated address," and "validate that individuals that show as having voted in the 2020 General election match those individuals who believe they have cast a vote," Statement of Work ¶¶ 2.1, 5.1 (explaining that voters may be questioned by phone calls and at-home visits),[1] as well as engage in a comparison of the voter rolls against lists of supposedly "invalid voters," Statement of Work ¶ 4.1. As explained below, these tactics—no matter their intent—constitute illegal voter intimidation and might expose your companies to both civil and criminal penalties.

Accordingly, we demand that you immediately (1) cease any planned or ongoing violations of federal and state law, including but not limited to any conduct that may intimidate voters, and (2) implement safeguards to ensure that no additional legal violations occur. In addition, because

---

[1] And in fact, Cyber Ninjas admits that it has *already* done door-to-door physical canvassing. Statement of Work ¶ 2.1.

litigation may commence should your companies engage in the conduct outlined in the Statement of Work or any other conduct that intimidates voters, we demand that you (3) immediately take all necessary steps to preserve any and all records related to the Cyber Ninjas "Audit" or other records concerning audits of the 2020 presidential election, including but not limited to (i) records concerning the negotiation, bidding, planning, and implementation of the Cyber Ninjas "Audit"; (ii) any and all communications related to the Cyber Ninjas "Audit" as well as any other efforts to challenge or verify the 2020 election results; (iii) any and all records—including communications—by your companies, officers, or employees related to challenging or verifying the 2020 election results; (iv) any and all communications with legislators and their staff concerning the "Audit"; and (v) any and all records—including but not limited to communications and social media posts—by your companies, their officers, and employees related to the accuracy or validity of the 2020 election results.

Multiple audits—including hand recounts and forensic audits—have already confirmed the accuracy, integrity and outcome of the Maricopa County election—a conclusion with which both Republicans and Democrats agree. Indeed, following an extensive audit, the Republican-led Maricopa County Board of Supervisors unanimously certified the election results, and the Republican Chairman of that Board publicly affirmed that the "election was administered with integrity, transparency, and most importantly in accordance with Arizona state laws."[2] The Cyber Ninjas "Audit" is therefore not only unnecessary but also—for the reasons detailed below— substantially likely to result in the violation of both federal and state laws.

**Federal law prohibits intimidating voters, regardless of your companies' intent when doing so.**

Numerous federal laws prohibit intimidation of voters. The Civil Rights Act of 1957 makes it illegal to intentionally intimidate voters.[3] The Ku Klux Klan Act of 1871 ("Klan Act") makes it illegal either to engage in a conspiracy to injure or intimidate voters, and also allows for, among other things, the recovery of damages for such conspiracies.[4] Crucially, under the Voting Rights Act of 1965, intimidating voters is illegal *regardless* of whether someone acts with an intent to intimidate.[5] In addition to providing these civil remedies, federal law also makes intentional voter intimidation a criminal offense.[6]

Voter intimidation can take many forms and need not include threats of physical violence. Indeed, the anti-voter intimidation provisions of the Voting Rights Act were intended to address a "sometimes more subtle, certainly more damaging" obstacle to voting: "*fear.*"[7] As a result, falsely

---

[2] Jen Fifield, *Maricopa County Board of Supervisors votes unanimously to certify election results*, Arizona Republic (Nov. 20, 2020), https://www.azcentral.com/story/news/politics/elections/2020/11/20/maricopa-county-supervisors-meet-consider-certifying-election-results/6362991002/.

[3] 52 U.S.C. § 10101(b).

[4] 42 U.S.C. § 1985(3) clauses 3 & 4.

[5] 52 U.S.C. § 10307(b).

[6] *See* 18 U.S.C. § 594 (making intentional voter intimidation a federal crime punishable by imprisonment); *see also* 52 U.S.C. § 20511 (imposing criminal penalties for anyone who knowingly and willfully intimidates or coerces prospective voters in registering to vote, or for voting, in any election for federal office).

[7] Voting Rights: Hearing on S. 1564 Before S. Comm. on the Judiciary, 89th Cong. 7 (1965) (Statement of Nicholas deB. Katzenbach, Att'y Gen. of the United States) (emphasis added); *id.* at 12 (explaining that the Voting Rights Act was specifically drafted to address "intimidation" that "involve[s] subtle forms of pressure"). The Ninth Circuit has also explained that a California statute prohibiting "coercion or intimidation" with respect to voting "is not limited to

accusing individuals of being unlawful voters can violate both the Voting Rights Act and the Klan Act.[8] As does making calls to voters suggesting that they may suffer negative consequences from electoral participation.[9] Importantly, your companies cannot escape liability for voter intimidation by cloaking your activities under the guise of a so-called "audit." As the Department of Justice has previously explained, one can violate federal voting rights law even when it is purportedly part of an effort to investigate election crimes and fraud.[10]

Many of the tactics envisioned by the Statement of Work for the "Audit"—such as interrogating voters and generating reports on supposedly "unlawful" voters—are just the sort of conduct that have created federal voting rights liabilities for entities and individuals in the past.[11] Therefore, should you proceed with your current proposed Statement of Work or engage in any other conduct that intimidates Arizona voters, your companies may be named as defendants in federal civil rights lawsuits, thereby exposing you to money damages,[12] the payment of attorneys' fees,[13] and court injunctions. The same conduct also may expose your companies, officers, and employees to criminal penalties.[14] And, in any event, contacting and interrogating voters about their registration and voting history months after an election bears no relation to an "audit" of ballots.

Further, under federal civil rights law, you not only have the obligation to not violate federal voter intimidation laws, but you *also* have an affirmative obligation under Section 6 of the Klan Act to take steps to prevent conspiracies to intimidate or injure voters in federal elections[15]

---

displays or applications of force" but also covers intimidation "achieved through manipulation and suggestion." *United States v. Nguyen*, 673 F.3d 1259, 1265 (9th Cir. 2012).

[8] *See LULAC-Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 18-423, 2018 WL 3848404, at *4-6 (E.D. Va. 2018) (holding that no showing of specific intent or racial animus is required under § 11(b) [i.e. 52 U.S.C. § 10307(b)]).

[9] *National Coalition for Black Civil Participation v. Wohl*, 2020 WL 6305325 (S.D.N.Y., Oct. 28, 2020).

[10] *See* U.S. Att'y for N.D. Ala., *District Elections Officers Available Nov. 8 to Receive Complaints of Election Fraud or Voting Rights Abuses* (Oct. 21, 2016), *available at* https://www.justice.gov/usao-ndal/pr/district-elections-officers-available-nov-8-receive-complaints-election-fraud-or-voting (observing that even "actions to uncover illegal voting . . . may violate federal voting rights law").

[11] For example, the State of Texas recently was forced to settle multiple federal lawsuits after an erroneous audit wrongly flagged citizens as potentially unlawful voters. *See* Alexa Ura, *Texas will end its botched voter citizenship review and rescind its list of flagged voters*, Texas Tribune (Apr. 26, 2019), *available at* https://www.texastribune.org/2019/04/26/texas-voting-rights-groups-win-settlement-secretary-of-state/. Similarly, the Pence-Kobach Commission's prior attempt to pursue baseless allegations of unlawful voting disbanded after facing a barrage of lawsuits and without discovering any widespread voter fraud. *See, e.g.*, John Wagner, *Trump abolishes controversial commission studying alleged voter fraud*, Wash. Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/politics/trump-abolishes-controversial-commission-studying-voter-fraud/2018/01/03/665b1878-f0e2-11e7-b3bf-ab90a706e175_story.html; Andrew Gumbel, *Documents disprove White House voter fraud claims, says ex-member of Trump Commission*, The Guardian (Aug. 3, 2018), *available at* https://www.theguardian.com/us-news/2018/aug/03/documents-disprove-white-house-voter-claims-says-ex-member-of-trump-commission.

[12] See, e.g., 42 U.S.C. § 1985(3); 52 U.S.C. § 10307(b).

[13] See, e.g., 42 U.S.C. § 1988(b).

[14] See 18 U.S.C. § 594 (making intentional voter intimidation a federal crime punishable by imprisonment); *see also* 52 U.S.C. § 20511(1) (imposing criminal penalties for anyone who knowingly and willfully intimidates or coerces prospective voters in registering to vote, or for voting, in any election for federal office).

[15] *See* 42 U.S.C. § 1986.

regardless of whether your company is a participant in that conspiracy.[16] As a result, should your company, its officers, or employees have any knowledge whatsoever that any participants in the Cyber Ninjas "Audit" or any funders thereof may be participating in bad faith in order to raise false accusations of unlawful voting or to frighten voters, you should immediately take steps to stop those efforts and also report any such activities to, among other entities, the Civil Rights Division of the United States Department of Justice. Failure to do so likewise may expose you to penalties under federal law.

**Arizona law contains additional restrictions on voter intimidation, and exposes your companies to additional criminal and civil liability.**

In addition to the restrictions imposed by federal law, the proposed tactics envisioned by the Cyber Ninjas "Audit" also may violate Arizona criminal and civil law.

Under Arizona law, it is a class 5 felony to knowingly engage in or attempt any activity with the intent *or* effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) to influence a voter in casting their vote or to deter them from casting their vote.[17] This includes influencing how they vote or hindering the free exercise of the right to vote in any way.[18] The Arizona Election Procedures Manual lists "directly confronting or questioning voters in a harassing or intimidating manner" as an example of a prohibited intimidation tactic.[19] To be sure, your companies' plan to directly question voters about their past voting activities— particularly in the context of a so-called "Audit" of the election—reasonably could deter people from voting in the future for fear of reprisals or further harassment. As a result, such questioning and investigations—particularly after there have already been multiple post-election audits that have confirmed the election's integrity—may violate Arizona law.

Additionally, it is unlawful in Arizona for any person to knowingly "in any manner . . . practice intimidation upon or against any person, in order to induce or compel such person to vote or refrain from voting for a particular person or measure at any election provided by law, or on account of such person having voted or refrained from voting at an election."[20] The unfounded and unnecessary door-to-door questioning of voters and the implication that these voters have been engaged in unlawful election activity is clearly intimidating activity that is likely to dissuade eligible voters from engaging in the political process.

In addition to violating Arizona's criminal laws, many of the tactics envisioned by the Cyber Ninjas "Audit" also risk exposing your company to civil liability under state law, including but not limited to various torts.

**Demand to preserve records.**

Litigation may be imminent should your companies continue to pursue the activities described in the Statement of Work as part of the Cyber Ninjas "Audit" or engage in any other

---

[16] *See, e.g.*, *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997) ("Though we agree with the district court that § 1986 requires a violation of § 1985, it does not follow that individuals liable under § 1986 must be involved in the § 1985 conspiracy.").

[17] Ariz. Sec. State 2019 Election Procedures Manual at 180; A.R.S. § 16-1006(A)(1).

[18] A.R.S. § 16-1006(A)-(B).

[19] Ariz. Sec. State 2019 Election Procedures Manual at 181.

[20] A.R.S. § 16-1013(A)(1).

conduct that intimidates voters. Therefore, you should be on notice of your obligation to preserve any and all records related to the Cyber Ninjas "Audit" or other records concerning audits of the 2020 presidential election, including but not limited to (i) records concerning negotiation, bidding, planning, and implementation of the Cyber Ninjas "Audit," (ii) any and all communications related to the Cyber Ninjas "Audit" as well as any other efforts to challenge or verify the 2020 election results; (iii) any and all records—including communications—by your companies, officers and employees related to challenging or verifying 2020 election results; (iv) any and all communications with legislators and their staff concerning the "Audit"; and (v) any and all records—including but not limited to communications and social media posts—by your companies, their officers, and employees related to the  accuracy of the 2020 election results. Failure to comply with this  demand could expose you to sanctions for spoliation.[21] In addition, failure to preserve records—as well as any alteration or improper disclosure—may also result in additional criminal liability.[22]


Sincerely,

/s/ Sara Chimene-Weiss
Sara Chimene-Weiss
THE PROTECT DEMOCRACY PROJECT
530 E McDowell Road, Suite 107-222
Phoenix, AZ 85004
Telephone: (202) 934-4237
sara.chimene-weiss@protectdemocracy.org

James E. Barton II
BARTON MENDEZ SOTO PLLC
401 W Baseline Road, Suite 205
Tempe, AZ 85783
Telephone: (602) 616-0535
James@bartonmendezsoto.com

Roopali H. Desai
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5478
rdesai@cblawyers.com

---

[21] *See e.g., Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 267 (2010) (discussing availability of sanctions for spoliation).

[22] Federal law requires retention of records related to elections for federal office for 22 months.  52 U.S.C. § 20701. Any official or custodian who steals, destroys, conceals, mutilates, or alters such records can be punished by up to one year in prison and $1,000.  52 U.S.C. § 20702; *see also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Allowing disclosure of unredacted voter applications is inconsistent also with Congress's concern for individual privacy evidenced in Federal statutes, including statutes such as [52 U.S.C. § 20701,]").

Sarah R. Gonski
PERKINS COIE LLP
2901 N. Central Ave., Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602-351-8000
sgonski@perkinscoie.com

**CC:**

Karen Fann, Arizona Senate President

Gregg Jernigan, Counsel to Arizona Senate

Katie Hobbs, Arizona Secretary of State

Clint Hickman, Maricopa County Board of Supervisors

Jack Sellers, Maricopa County Board of Supervisors

Steve Chucri, Maricopa County Board of Supervisors

Bill Gates, Maricopa County Board of Supervisors

Steve Gallardo, Maricopa County Board of Supervisors